775 F.2d 99
 23 ERC 1692, 54 USLW 2245, 16 Envtl.
L. Rep. 20,462
 Janis DUNN; William Dunn; Anthony Amorose; Stella Badia;
Samuel W. Brown and Evelyn Brown, his wife; Debra Burgess;
Louis Kenneth Davis, Sr. and Helen H. Davis, his wife;
Frank J. DeLost and Marie K. DeLost, his wife; Tony DeLost
and Jean B. DeLost, his wife; Robert E. Dunn and Dorothy C.
Dunn, his wife; Robert W. Dunn and Kathryn Dunn, his wife;
Audrey Farson; Jane B. Heirendt; M. Marjorie Herron; John
R. Hilderbrand, Sr.; Edward T. Liptak and Jacqueline
Liptak, his wife; Jacqueline Liptak, as custodian for
Edward Liptak; Donna G. Mack; Elizabeth Maffio; Patricia
Malardie; Edward J. Marton and Juanita Marton, his wife;
Est Betty McGant, thru Exec. Alexander McGant; Barbara L.
Prowitt; Elio Spinoso and Isabella M. Spinose, his wife;
Michael Tomecsko and Peggy Tomecsko, his wife; Gerald H.
Wagner and Rosann Wagner, his wife; Sophie Winseck; Elmer
J. Young, Sr.; and Frank R. Zuzek
v.
The UNITED STATES of America; United States Department of
Energy and The Honorable James B. Edwards, its Secretary;
United States Department of Defense and The Honorable Casper
Weinberger, its Secretary; United States Nuclear Regulatory
Commission and Joseph M. Hendrie, its Chairman; United
States Department of Public Health & Welfare and The
Honorable Richard A. Schweiker, its Secretary; United
States Environmental Protection Agency and Ann McGill
Gorsuch, its Administrator; the Commonwealth of
Pennsylvania and The Honorable Richard A. Thornburgh, its
Governor; and the Pennsylvania Department of Environmental
Resources and Peter Duncan, its Secretary.
Appeal of Janis DUNN, et al.
 No. 85-3064.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 14, 1985.
Decided Oct. 21, 1985.
Rehearing and Rehearing En Banc Denied Dec. 16, 1985.
 
 J. Jerome Mansmann, Robert Cindrich (argued), Mansmann Cindrich & Huber, Pittsburgh, Pa., for appellants.
 J. Alan Johnson, U.S. Atty., Anthony M. Mariani, Asst. U.S. Atty., Pittsburgh, Pa., F. Henry Habicht II, Asst. Atty. Gen., Dirk K. Snel, David W. Zugschwerdt, Margaret A. Hill (argued), Attys., Dept. of Justice, Washington, D.C., for appellees.
 Before ADAMS, GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Janis Dunn and others, the named plaintiffs in a class action against several federal agencies, appeal from an order dismissing their petition for the award of counsel fees pursuant to the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d), for lack of jurisdiction. The petition was filed in a case in which a consent judgment was entered on May 23, 1984. A verified fee petition was filed on June 22, 1984. The district court dismissed for lack of jurisdiction because the petition, filed on the last day of the time period specified in 28 U.S.C. Sec. 2412(d)(1)(B) (1982), was not sufficiently specific. We reverse and remand for further proceedings.
 
 I.
 
 2
 The underlying action for injunctive relief and damages arises out of radiation contamination in the Canonsburg, Pennsylvania area near a uranium processing site. The plaintiff class members are residential landowners near the site. The defendants include the United States and several federal agencies, the Department of Energy, the Environmental Protection Agency, the Nuclear Regulatory Commission, the Department of Defense, and the Department of Health and Human Services. The class contended that radiation contamination at the site amounted to an actual nuisance which should be corrected by remedial action. Settlement discussions resulted in a consent decree. In the consent decree, the plaintiffs reserved the right to apply for fees pursuant to the Equal Access to Justice Act, and the federal defendants reserved the right to oppose any award of fees and expenses. As noted above, a verified petition seeking such fees was filed on June 22, 1984, the thirtieth day following the entry of the consent decree.
 
 
 3
 The Equal Access to Justice Act, although repealed by section 204(c) of Pub.L. 96-481 as of October 1, 1984, governs this action, since it was pending prior to the effective date of the repeal.[1] In relevant part the Act provides:
 
 
 4
 A party seeking an award of fees shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from an attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed. The party shall also allege that the petition of the United States was not substantially justified.
 
 
 5
 28 U.S.C. Sec. 2412(d)(1)(B) (1982).
 
 
 6
 The petition filed with the court on June 22, 1984 alleged that the action had been concluded on May 23, 1984 by the entry of a consent judgment, that the petitioners were prevailing parties in the action, and that the position of the federal government had not been substantially justified. It alleged that no petitioner's net worth exceeded one million dollars, and thus established that the petitioners were eligible, under 28 U.S.C. Sec. 2412(d)(2)(B) (1982), to receive an award.[2] It alleged as well, that "[t]he attorneys' fees requested and a description of services rendered by the law firm of Mansmann, Cindrich & Huber are set forth in the accompanying affidavit filed by J. Jerome Mansmann of the law firm of Mansmann, Cindrich & Huber." Attached to the petition is an affidavit by J. Jerome Mansmann, which alleges:
 
 
 7
 1. The factual allegations set forth in plaintiffs' petition for Attorneys' Fees, Expenses, and Costs are true and correct to the best of my knowledge, information and belief.
 
 
 8
 2. The time and costs expended, as represented in this petition, are drawn from the financial records of my firm, and are necessarily incurred in order to properly represent the plaintiffs' interests.
 
 
 9
 3. Plaintiffs have neither received nor applied for, and do not intend to apply for, reimbursement of the costs of items listed in the Petition under any other program or statute.
 
 
 10
 4. No plaintiff's net worth exceeded $1,000,000.00 as of the date on which this proceeding was initiated.
 
 
 11
 AND FURTHER DEPONENT sayeth not.
 
 
 12
 The June 22, 1984 affidavit mentions neither a specific amount of fees requested, nor an itemized statement of the actual time expended and the rate at which fees and expenses are computed. On June 22, 1984 the petitioners also served a memorandum in support of their petition, asserting that both an increase in the cost of living and various special factors justify an award in excess of the $75 per hour normal ceiling rate for compensation of attorneys specified in 28 U.S.C. Sec. 2412(d)(2)(A) (1982). The memorandum addressed in detail the reasons why petitioners should be regarded as the prevailing party and why the position of the United States was not substantially justified. It did not, however, specify an amount of fees, and it did not contain an itemized statement of hours and expenses. Because the practice of the clerk in the Western District of Pennsylvania is not to docket memoranda of law, but simply to forward them to the judge to whom the case is assigned, no docket entry discloses the filing date of this memorandum.
 
 
 13
 On June 27, 1984 the petitioner served and filed an affidavit of J. Jerome Mansmann in support of the request for fees and allowances, to which is attached resumes of the attorneys in the firm of Mansmann, Cindrich & Huber, detailed time records for each attorney, a summary of time expended, a computer detail of time expended, a statement of costs, a ledger detail of costs, and a statement for total costs expended of $6,807.64 and for time, at the customary billing rate for each attorney, totaling $92,833.24, at the statutory rate of $75 per hour, totalling $78,347.04, and at a requested rate of $86.03 per hour, and at the customary billing rate with a 1.5 multiplier. Mansmann's affidavit set forth the reasons why more than the statutory rate should be awarded. The information contained in the supporting exhibits is remarkably complete.
 
 
 14
 On July 9, 1984 the petitioners filed the affidavit of Gary L. Sweat, a partner in the firm of Johnson & Sweat, which is co-counsel to the plaintiff class, with supporting exhibits similar to those filed on June 27, 1984 with respect to the time and expenses of Mansmann, Cindrich & Huber. The Johnson & Sweat statements show the disbursement of expenses totalling $1,739.45 and the expenditure of time valued at customary billing rates at $25,422.00.
 
 
 15
 On August 1, 1984 the United States served and filed an answer to the verified petition for allowance of attorneys fees, in which it put in issue the contentions that the petitioners were the prevailing parties and that the position of the United States was not substantially justified. The answer also alleged that the petitioners were not entitled to an award of fees in the amounts requested. In addition, the answer asserted the defense that "[t]he Court lacks jurisdiction, under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412, to award Plaintiffs attorneys fees and costs in this action." Simultaneously with this answer, the United States filed declarations under penalty of perjury of several federal officials in opposition to the petition for fees and expenses, and served a memorandum of points and authorities in opposition. That memorandum argues that the petitioners are not the prevailing parties. It also argues that because the June 22, 1984 petition did not contain an itemized statement of the time expended and the rate of compensation, and an indication of the amount sought, the court lacked the power to consider the application.
 
 
 16
 The district court, while noting that except for non-compliance with the statutory time requirements an award of fees and expenses would have been made, held that the failure of petitioners to include the itemized statements and an indication of the amount sought in the June 22, 1984 petition deprived it of power to consider the award. Relying on language in Action on Smoking and Health v. Civil Aeronautics Board, 724 F.2d 211, 225 (D.C.Cir.1984), the court reasoned:
 
 
 17
 The thirty-day time limitation contained in the EAJA is not simply a statute of limitations. It is a jurisdictional prerequisite to governmental liability. Plaintiffs' failure to file an application in compliance with the provisions of 28 U.S.C. Sec. 2412(d)(1)(B) deprives this court of subject matter jurisdiction to award fees.
 
 
 18
 A. 237, 238. This appeal followed.
 
 II.
 
 19
 Petitioners make two arguments with respect to the district court's ruling, either of which, if accepted, would require a reversal. First, they contend that the purpose of the thirty-day time limit in 28 U.S.C. Sec. 2412(d)(1)(B) is merely to fix the time, as a matter of procedure, within which a petition for fees should be filed, while specification of the contents of the petition serves merely to inform the court of the substantive matters to be taken into account in fixing an amount. Neither statutory purpose, they urge, has anything to do with subject matter jurisdiction in the sense that the district court used that term. Second, they urge that, in any event, both the June 27 and the July 9, 1984 filings were within the thirty day period, because the consent judgment did not become final until the time for appeal from that judgment expired, sixty days after May 23, 1984. We address these contentions separately.
 
 A.
 
 20
 Two courts of appeals have been presented with the situation in which a fee petition under the Equal Access to Justice Act has been filed with the district court more than thirty days after the docketing of a final judgment. Action on Smoking and Health v. Civil Aeronautics Board, 724 F.2d 211, 225 (D.C.Cir.1984); Columbia Manufacturing Corp. v. NLRB, 715 F.2d 1409, 1410 (9th Cir.1983). A third has dealt with a similarly late filing of a fee petition for services performed in agency adjudication, governed by 5 U.S.C. Sec. 504(a)(2). Monark Boat Co. v. NLRB, 708 F.2d 1322, 1326-27 (8th Cir.1983). All three courts have held that if the petition is filed outside the thirty-day time period the district court or the adjudicating agency may not consider it.[3] All reasoned that time limitations on relief to which the United States as a sovereign has consented should be strictly construed. The three cases on which the government relies do not deal, however, with the situation presented to us: a timely filing of a petition arguably defective in content. The government urges, however, that the reasoning of at least one of those cases supports the result it seeks to uphold, for in Action on Smoking and Health, Judge Bazelon states that timely filing is "jurisdictional." 724 F.2d at 225. The Court also observes, however, that the result in essence would have been the same if the thirty-day period were simply a statute of limitations, because the petitioner offered no reasons for the application of the ameliorating doctrines of waiver, estoppel, and equitable tolling. 724 F.2d at 225-26.
 
 
 21
 We have no quarrel with the general proposition that time bars with respect to the filing of claims against the United States should be strictly construed. That has been the recognized rule of statutory interpretation with respect to filing administrative claims and complaints under the Federal Tort Claims Act. But this court has recognized that while the time for filing a claim must be strictly complied with, deficiencies in the contents of the claim may be corrected if the government cannot show any prejudice arising from the later correction of those deficiencies. Tucker v. United States Postal Service, 676 F.2d 954 (3d Cir.1982).
 
 
 22
 We are, of course, dealing with an issue of statutory construction. It is not helpful in approaching that task to attach labels such as "jurisdictional" to the actions of Congress before first examining the language of the statute and the context in which that language was used. Section 2412(d)(1)(B) contains two requirements: a time for filing, and a standard for pleading. It is not immediately apparent that Congress intended that strict compliance with the pleading requirement must be accomplished within the same time as filing. The two requirements serve different purposes.
 
 
 23
 Requiring the filing of a fee claim (or any other) with the court or adjudicative agency serves the purpose of establishing a means certain for proving compliance with a time bar. Such certainty is required in most situations in the interest of finality and reliance. But once the claim is filed, whether or not it is as complete as it should be, the interests of proof of timeliness and of finality and reliance have been satisfied. What remains is the fleshing out of the details, and the government has pointed out no governmental interest which is in any way affected by the fact that the details of the fee claim came shortly after the claim was filed.
 
 
 24
 Unlike the Federal Tort Claims Act which provides for administrative filing of claims as a condition precedent to filing in a court in order to permit government agencies to consider settlement, section 2412(d) authorizes filing with the court in the first instance, with no provision for administrative action. The filing thus takes place in a pending action, as to which the United States has already waived the claim of sovereign immunity. The government is already in court when the question arises. Moreover, while section 2412(d) provides for "submission to the court, within thirty days," it makes no provision for a time limit on service of the application. It appears, therefore, that in enacting section 2412(d) Congress was not concerned with the time within which affected government agencies received information about the details of the fee claim. Since the court to which the application is submitted obviously will not act on it until the government responds, it is equally clear that Congress was not concerned with any separate interest of the court in promptly receiving information about the details of the claim. In short, no identifiable interest of the affected government agencies or of the court suggests that Congress intended that the pleading requirements of section 2412(d)(1)(B), as distinct from the filing requirement, be treated as metaphysically "jurisdictional."
 
 
 25
 On the other hand there are good reasons why the pleading requirements should be read as permitting some degree of flexibility. We know from our experience, both under the Equal Access to Justice Act and in other instances, of departure from the American Rule on fees that fee petitions must be prepared with great care because they are often hotly contested. Litigation over fee amounts has on some occasions been almost as protracted as the underlying lawsuit. Congress cannot have been unmindful of this reality. If we were to construe section 2412(d)(1)(B) in the manner urged by the government and accepted by the district court, the result would be to force counsel to demand the highest amount and include the largest number of hours and items of expense they could dream up. That would be so because the logic of the government's position as to the meaning of section 2412(d)(1)(B) would preclude any upward amendment of the petition after the expiration of the thirty-day filing period. It seems unlikely that Congress would have intended anything so inconsistent with sound administration and fair adjudication of fee disputes.
 
 
 26
 Thus we conclude that Congress did not intend that defects in the pleading requirements of section 2412(d)(1)(B) be treated as jurisdictional. So long as a fee petition is filed within the thirty-day period which puts the court, and eventually the government, on notice that the petitioner seeks fees under the Equal Access to Justice Act, the court may consider the petition, and may, absent prejudice to the government or noncompliance with court orders for timely completion of the fee determination, permit supplementation. Because in this instance the fee petition giving such notice was timely filed, we need not address the question whether section 2412(d)(1)(B) is merely a statute of limitations and thus subject to the doctrines of waiver, estoppel, or equitable tolling.
 
 B.
 
 27
 Our holding that the court did not lack subject matter jurisdiction over the fee petition is dispositive and requires a reversal. Because, however, the government may seek further review, we deem it appropriate to address petitioners' alternative contention that in any event the June 27 and July 9, 1984 filings were timely because the judgment did not become final until the time for appeal expired. If in fact the consent judgment is an appealable order, petitioners are correct. A final judgment, for purposes of the Act, is a judgment that is "final and not appealable." Act of Aug. 5, 1985, Pub. L. No. 99-80, Sec. 2(c)(2)(B), 1985 U.S. Code Cong. & Ad. News (99 Stat.) 183, 185 (amending 28 U.S.C. Sec. 2412 (d)(2)(1982)). Tucker v. United States Postal Service, 676 F.2d 954 (3d Cir.1982). The question, however, is whether a consent order settling a class action is appealable. Certainly neither the government defendants nor the plaintiff class representatives may appeal such an order. Having negotiated and agreed to its terms those parties are not aggrieved by it, and thus neither may appeal.
 
 
 28
 Petitioners point out, however, that in class actions members of the affected class may seek leave to intervene in order to object to a settlement, and may appeal because they are dissatisfied with the relief obtained. While there is some merit to that contention, we do not find it controlling here. In this instance no application for intervention was filed either prior to the entry of the consent decree or during the thirty-day period specified in section 2412(d)(1)(B). Mindful of the policy of repose behind that section, we hold that absent any motion for intervention prior to the expiration of the thirty-day period, a consent judgment, even in a class action, shall be deemed final as of the date of its entry.
 
 III.
 
 29
 The district court did not lack subject matter jurisdiction to consider the fee petition. The judgment appealed from must, therefore, be reversed and the case remanded for further proceedings.
 
 
 30
 ADAMS, Circuit Judge, dissenting.
 
 
 31
 I respectfully dissent. Although I share the majority's concern over the hardship resulting from a strict application of the statute in this case, I believe we are constrained by firmly established principle to affirm the trial court's ruling that it lacked jurisdiction to entertain the fee petition at issue here.
 
 
 32
 The guiding precept in this field is clear. The Equal Access to Justice Act (EAJA) represents a waiver of the federal government's immunity from lawsuits for attorney's fees. Action on Smoking and Health v. Civil Aeronautics Board, 724 F.2d 211, 225 (D.C.Cir.1984). Waivers of sovereign immunity must be strictly construed. Id. Where the government agrees to permit lawsuits against it, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941).
 
 
 33
 Also clear is the statutory language in this case. The Act states that a party seeking fees, "shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows ... the amount sought, including an itemized statement from an attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed." 28 U.S.C. Sec. 2412(d)(1)(B) (1982) (emphasis added).
 
 
 34
 In stating what is required of a petitioner, the statute uses mandatory language. The requirement that an itemized statement be filed is contained in the same sentence as the requirement that a claim be filed within 30 days. Nothing in the wording or structure of the sentence suggests that certain elements necessary to meet the statute's jurisdictional prerequisites are more or less important than others, or that some are to be interpreted more or less strictly than others.
 
 
 35
 To the extent it sheds any light on the issue, the legislative history of this provision provides no support for the majority's parsing of the statute's jurisdictional requirements. The House Conference Report, in adopting the Senate version of the 30-day requirement, described it as follows: "The Senate bill also requires a party seeking an award of fees and other expenses to submit an application for them within thirty days of final judgment, including a showing of eligibility and an itemized statement of the amount claimed." H.R.Rep. No. 1434, 96th Cong., 2d Sess. 26 (1980), reprinted in 1980 U.S.Code Cong. & Ad.News 4953, 5003, 5015. Nothing here states, or in any way suggests, that any element is to be enforced with less stringency than any other. Nor, as the majority agrees, do any of the cases interpreting the EAJA support a liberal interpretation. Rather, the cases provide unanimous support for strict construction of the statute. See e.g., Action on Smoking and Health, 724 F.2d at 225; Monark Boat Co. v. NLRB, 708 F.2d 1322, 1326-1327 (8th Cir.1983) (interpreting "nearly identical" jurisdictional provision of 5 U.S.C. Sec. 504, section of EAJA governing fee awards in agency adjudication).
 
 
 36
 The majority appears to believe that the treatment of the Federal Tort Claims Act jurisdictional provision in Tucker v. United States Postal Service, 676 F.2d 954 (3d Cir.1982), buttresses its position. That case, however, is not analogous to this one. In Tucker, the Court interpreted two provisions of the Federal Tort Claims Act: a jurisdictional provision, set forth in two sections, requiring that a claim under the act be filed with the appropriate government agency within two years of the accident, and another provision conferring authority on the agency to settle the claim. Under the settlement provision, the government also promulgated a regulation allowing the agency to request detailed documentation of the claimant. The regulation stated that such documentation "may be required" of the claimant. 676 F.2d at 956-957.
 
 
 37
 Tucker rejected the position that a claimant's failure to comply with a request for documentation under this regulation deprived a court of jurisdiction to hear a claim that otherwise met the statutory requirements. Rather than excusing a failure to comply with jurisdictional requirements, the court found that the settlement provision was clearly independent of the jurisdictional provision. Noncompliance with the settlement portion, declared the court, "deprives a claimant only of the opportunity to settle his or her claim outside the courts," 676 F.2d at 959, quoting Adams v. United States, 615 F.2d 284, 290, modified, 622 F.2d 197 (5th Cir.1980), while noncompliance with the jurisdictional provision "deprives a claimant of federal court jurisdiction over his or her claim." Id. This conclusion, it added, was reinforced by the precatory language employed in the regulation; a jurisdictional prerequisite, it reasoned, would not be expressed in "permissive" language. Tucker, 676 F.2d at 957.
 
 
 38
 Here, by contrast, we are faced with what is quite clearly a jurisdictional provision in the statute itself, framed in unambiguous, mandatory language. Given the clarity and force of the strict construction principle as to waivers of sovereign immunity, and in the absence of any authority for departing from it in the case of the EAJA, I would defer to the wording chosen by Congress and hold that the petitioner was required to file an itemized petition within 30 days.[1] And since I agree with the majority that the 30-day period in this case began with the date of entry of the consent judgment, I believe counsel's June 27th itemized statement was not timely filed. Accordingly, I would affirm the judgment of the district court.
 
 
 
 [1]
 The Act has now been restored. See Act of Aug. 5, 1985, Pub. L. No. 99-80, 1985 U.S. Code Cong. & Ad. News (99 Stat.) 183
 
 
 [2]
 When it recently extended the Act, Congress increased this amount to two million dollars. See Act of Aug. 5, 1985, Pub. L. No. 99-80, Sec. 2(c)(1)(A), 1985 U.S. Code Cong. & Ad. News (99 Stat.) 183, 185 (amending 28 U.S.C. Sec. 2412(d)(2)(1982))
 
 
 [3]
 Compare Berman v. Schweiker, 713 F.2d 1290, 1300 (7th Cir.1983) (Equal Access to Justice Act applies retroactively;) Taylor v. United States, 749 F.2d 171 (3d Cir.1984) (thirty-day period does not expire until time for appeal has expired)
 
 
 [1]
 Under the circumstances of this case, denying a counsel fee might appear to be a harsh result. In light of this, Congress may wish to amend the EAJA to allow a court to entertain a petition where the petitioner has substantially complied by filing a claim within 30 days. But because a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed," United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969), I believe the judiciary, as contrasted with the Congress, lacks the power to accomplish such a result